# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO PINA, | Case No. 1:17-cv-01681-SAB (PC) |
| Plaintiff, | ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS IDENTIFIED HEREIN |
| v. | |
| SCOTT KERNAN, et al., | |
| Defendants. | THIRTY-DAY DEADLINE |

Plaintiff Pablo Pina, a state prisoner, is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Plaintiff's complaint, filed December 14, 2017.

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is currently incarcerated at California State Prison Corcoran ("Corcoran"). Plaintiff alleges that he has been in administrative segregation ("Ad-Seg") on non-disciplinary status pending debriefing from gang activity since November 17, 2014, at Substance Abuse Treatment Facility ("SATF") and then Corcoran.

He alleges that the debriefing process should not take 3 years and it only takes that long when the Institutional Gang Investigator ("IGI") and OCS staff want to pressure the inmate for more information or to retaliate for something the inmate may have done to staff, which is what he says is happening to him. OCS and IGI investigators have been forcing inmates to tell them everything they may know, but Title 15 of the California Code of Regulations only requires debriefing inmates to give enough information to show that they are sincere about disassociating from gang activity.

In November 2014, Plaintiff was placed in Ad-Seg at SATF pending investigation by an IGI. About a week later, Officer Aguayo and Defendant Urban, who is an IGI, came to interview Plaintiff and Plaintiff stated that he wished to disassociate from gang activity by debriefing. Officer Aguayo and Defendant Urban said that they could do the debriefing process in 6 to 8 months and Defendant Urban even guaranteed it. Plaintiff was told that after the debriefing process, he would be on a special needs yard ("SNY"). Plaintiff was given the 2014 debriefing procedures and he turned in his autobiography within a few months to Officer Dominguez and Defendant Urban. As soon as he turned his autobiography in, he was interviewed by Officer Aguayo, Officer Harris, and Defendant Urban. Plaintiff was interviewed and shown pictures of his old associates multiple times.

In November 2015, Plaintiff was moved from 2-9 in Ad-Seg to E-1 in Ad-Seg and surrounded by a lot of active gang members. On the day he was moved, Defendant Urban told Plaintiff that Plaintiff was done with the process and that Defendant Urban had to type up the report and send it to OCS for approval. Defendant Urban said that he was almost done typing up the report and that the next time he saw him it would be to sign it. Defendant Urban said that once OCS approved it, Plaintiff would be sent to a SNY and that he could get Plaintiff an override for a level III yard.

 The E-1 unit was in bad shape with ceilings that leaked when it rained flooding the tiers, leaking sinks and toilets, messed up lights, ancient mattresses, and clothing that was like a rag. Plaintiff was not given a jacket on cold, rainy days. Plaintiff complained about these conditions to the warden at SATF. When there was no response, he wrote to Defendant Scott Kernan ("Defendant Kernan"), Secretary of CDCR, which started a big investigation. The SATF administration and E-1 staff were angered and told Defendant Urban and IGI that Plaintiff was complaining. Defendant Urban suddenly stopped talking to Plaintiff and did not pull Plaintiff out even though he pulled other inmates out.

Another inmate named White told Plaintiff that Defendant Urban was upset with Plaintiff because of Plaintiff's complaints. Another inmate named Garcia told Plaintiff that Defendant Urban told him that he was upset with Plaintiff because Plaintiff was causing a lot of problems

with Sacramento. Inmate Garcia began his debrief process at the same time as Plaintiff and inmate Garcia finished his process in June 2016.

In June 2016, Plaintiff was taken to the unit committee for his annual review. Defendant Peterson, CC II Counselor at SATF Ad-Seg ("Defendant Peterson"), told Plaintiff that they were extending his Ad-Seg detention for 6 months so that he could complete the debriefing process. Plaintiff argued with Defendant Peterson because Plaintiff felt that he was there longer than others despite doing what he was asked to do. Defendant Peterson told Plaintiff that he has been hearing that Plaintiff has been crying about the debriefing process taking too long and that Plaintiff refused to talk to IGI. Defendant Peterson threatened to send Plaintiff back to general population knowing that Plaintiff cannot go back to a regular yard. Defendant Peterson told Plaintiff to wait and do what IGI wants when they come see him. When Plaintiff told Defendant Peterson that he turned his autobiography in over a year ago, Defendant Peterson told Plaintiff that there is something that has to be corrected in the autobiography. Plaintiff asked why he was not told about correcting something when he turned it in, but Defendant Peterson looked at Defendant Urban and said that if Plaintiff continues to complain to the warden and Defendant Kernan, his case will be put on the back burner and he will not go anywhere. Plaintiff told Defendant Peterson that he wanted to be transferred to another prison to finish the debriefing process because they did not know what they were doing. After arguing for a minute, Plaintiff told Defendant Peterson that he wanted to stop the debriefing process. Defendant Peterson refused and told the guards to get Plaintiff out of the office. As Plaintiff was leaving the office, Defendant Peterson told Plaintiff to complain to the Secretary again.

About a week later, Counselor Moreno or Perez told Plaintiff that a new program would be opening at Corcoran SHU for people debriefing and it would be better.

On July 21, 2016, Plaintiff was moved from SATF to Corcoran SHU 4A-3L, which is worse than the Ad-Seg program at SATF. It took him months to get his property and he could not get access to the law library. Defendant Urban told Plaintiff that Defendant Garcia, an IGI Lieutenant, would be handling the debriefing process at Corcoran, but that Defendant Urban would still be making the final decision.

On September 2, 2016, he wrote a letter to Defendant Kernan, Defendant D. Davey ("Defendant Davey"), Warden at Corcoran, and Defendant Captain Leshniak ("Defendant Leshniak") complaining about the treatment he had been receiving in Unit 4A at Corcoran, including the fact that the appeals coordinator and others refused to process his 602 appeals.

On September 23, 2016, he wrote another letter to Defendants Kernan, Susan Hubbard ("Defendant Hubbard"), the Deputy Director of CDCR, and Leshniak telling them that he had been told in November 2014 by Aguayo and Defendant Urban that he would be out on a SNY Level III yard within six months of debriefing. However, he has been in a program at Corcoran called DPU, which is supposed to prepare him for general population, for over 18 months.

On October 6, 2016, Plaintiff wrote a letter to Defendants Kernan, Hubbard, Davey, and Leshniak complaining about being illegally held in Ad-Seg for two years. He explained that he turned in his autobiography over a year ago, but he was told he had to re-write it again.

On October 18, 2016, he wrote another letter to Defendant Kernan because the appeals coordinator refused to process 602 appeals and he was being denied access to the law library.

In October 2016, Plaintiff was called into Defendant Leshniak's office for an interview about a letter that he wrote to Defendants Kernan and Hubbard complaining about the way he was being treated. Defendant Leshniak interviewed Plaintiff on several occasions because of the letters Plaintiff wrote to Defendants Kernan and Hubbard. Plaintiff told Defendant Leshniak that he tried to get his legal materials, but the property officer did not respond and he asked the law library, but he did not receive an answer. Plaintiff said that he tried to file a 602 appeal, but it was sent back numerous times and people are refusing to process it. Defendant Leshniak disregarded Plaintiff's statements and said that he wants to know who is denying the 602 appeals even though Plaintiff just explained it to him. Defendant Leshniak said that complaining would not get Plaintiff out of Ad-Seg any sooner. It was obvious from the conversations that Defendant Leshniak spoke with Defendants Hubbard, Kernan, and Davey. Defendant Leshniak told Plaintiff that there was some confusion over the autobiography and that there was no record of it, so Plaintiff would have to do it again.

Plaintiff alleges that Defendant Leshniak told Plaintiff that Defendants Kernan and

Hubbard gave orders to Defendant Davey and other defendants to keep Plaintiff in segregation. However, Plaintiff also alleges that Defendant Hubbard told Defendants Garcia, Urban, Davey, Hoggard, and Leshniak that Plaintiff should have been released from segregation a long time ago, but they continued to delay his debriefing process and ignored Defendant Hubbard.

Approximately a week after being interviewed by Defendant Leshniak, Plaintiff was moved to 4A-3R, which is a DPU and is operated like Ad-Seg and has the same restrictions as Ag-Seg. Plaintiff was told by Officer Diaz, who was escorting him to his new cell, that he was being moved because he had not turned in his autobiography and because he pissed someone off.

Officer Diaz said that Defendants Counselor Hoggard ("Defendant Hoggard"), Davey, Leshniak, and Garcia made the list of who to move. Officer Diaz told Plaintiff that if he complains, files 602 appeals, or writes letters to the warden or director, it will only get worse and the best thing to do is keep a low profile. Plaintiff alleges that Defendants Hoggard, Davey, Leshniak, and Garcia knew that Plaintiff had turned in his autobiography, but they sent Plaintiff to 4A-3R in retaliation for Plaintiff writing the October 6, 2016 letter. Plaintiff alleges this was retaliation because he was moved right after the letter was sent.

When he reached his new cell, he wrote to Defendant Hoggard asking him why he was moved when he turned in his autobiography over a year ago, but Defendant Hoggard never responded.

A week later, IGI Officers Salcedo and Patino gave Plaintiff a stack of papers and said that Plaintiff had to rewrite his autobiography.

Sometime later in 2016, Plaintiff saw Officer Aguayo on the yard and asked him why he had to rewrite his autobiography. Officer Aguayo told Plaintiff that he did not have to do it again and that Defendant Hubbard told "them" in a meeting that she read Plaintiff's autobiography and that it is okay and that he should have been put on a SNY by now. Plaintiff asked Officer Aguayo why Officer Salcedo is telling him to rewrite it, but Officer Aguayo did not know and said that Defendant Hubbard said that he does not have to rewrite it. Plaintiff alleges that Defendant Garcia knew that Defendants Hubbard and Kernan said that the autobiography was okay, but they made Plaintiff rewrite it to delay the process.

On November 2, 2016, Plaintiff filed a 602 appeal because he had been held in Ad-Seg illegally for 2 years and denied all privileges like a general population inmate. The 602 appeal was denied at the third level on June 1, 2017.

On November 17, 2016, Plaintiff turned in the rewrite of his autobiography because he did not want to stay in Ad-Seg. Plaintiff received a copy of the November 17, 2016 chrono that said that the autobiography was accepted. At that time, Plaintiff was moved back to 4A-3L and has remained there. In October 2016, Defendants Kernan, Hubbard, and Davey implemented new operational procedures for the DPU unit that state that OCS has 90 days to complete the debrief interview after an inmate's autobiography is accepted. However, Plaintiff has not been interviewed yet even though his autobiography was accepted on November 17, 2016. Plaintiff has been told that after he finishes in the DPU unit, he has to go to a THU program for 6 months that is identical to the DPU.

On October 2, 2017, Plaintiff wrote another letter to Defendant Hubbard complaining about being held in Ad-Seg for two-and-a-half years. He explained that he turned in his autobiography in 2015, but he was told he had not turned it in and he was forced to rewrite it. He told Defendant Hubbard that he should be released straight to a general population unit from DPU and not be sent to THU at Kern Valley. Even though Defendants Hubbard and Kernan know that Plaintiff is being illegally held in Ad-Seg because Plaintiff wrote them letters, they have done nothing to correct it. Defendants Hubbard and Kernan spoke to Defendant Davey and other defendants about Plaintiff complaining.

Plaintiff alleges that all defendants knew that Plaintiff had turned in his autobiography that was part of the debriefing process in 2015, yet denied knowing that. Instead of processing his debrief report, they let it sit for two-and-a-half years and passed it off to each other. They disregarded all procedures regarding safeguards against abuse, including the Ashker v. Brown settlement. All defendants had to be involved because no single official/defendant could keep Plaintiff in segregation without the approval of Defendants Davey, Kernan, and Hubbard. Defendant Urban had to talk to Defendant Garcia and Defendant Garcia had to then talk to Defendant Leshniak regarding why Plaintiff had to be held in segregation longer. Defendant

1  Leshniak then had to report that information to Defendant Davey to get his approval.

2      Plaintiff brings this action against Defendants Kernan, Hubbard, Davey, Leshniak, Garcia,

3  Urban, Slater, Hoggard, Peterson, and Doe Defendant seeking a declaration that his rights were

4  violated, injunctive relief, and monetary damages.

5                                    **III.**

6                                **DISCUSSION**

7      **A.    Linkage Under Section 1983**

8      Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or

9  other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d

10 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006);

11 Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  "Section 1983 is not itself a source of

12 substantive rights, but merely provides a method for vindicating federal rights elsewhere

13 conferred."  Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012)

14 (citing Graham v. Connor, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted).  To

15 state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection,

16 between each defendant's actions or omissions and a violation of his federal rights.  Lemire v.

17 California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652

18 F.3d 1202, 1205-08 (9th Cir. 2011).

19     **B.    Eighth Amendment**

20     Plaintiff alleges that Defendants subjected him to cruel and unusual punishment because

21 their actions and non-actions have caused Plaintiff to be in Ad-Seg for three years.

22     The Eighth Amendment's prohibition against cruel and unusual punishment protects

23 convicted prisoners.  Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham, 490 U.S. at 395 n.10.

24 Although prison conditions may be restrictive and harsh, prison officials have a duty to ensure that

25 prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal

26 safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations

27 omitted), but not every injury that a prisoner sustains while in prison represents a constitutional

28 violation, Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (quotation marks omitted).

However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm.  Farmer v. Brennan, 511 U.S. 825, 834, 841 (1994) (quotations omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

"While the Eighth Amendment requires prison officials to provide prisoners with the basic human needs, including reasonable safety, it does not require that the prisoners be comfortable and provided with every amenity."  Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)).  A housing assignment may be "restrictive and even harsh," but will not violate the Eighth Amendment unless it "either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment."  Rhodes v. Chapman, 452 U.S. 337, 348-49 (1981) (finding inmates had no constitutional right to be housed in single cells).

Plaintiff alleges that he was in Ad-Seg for 3 years between his time at SATF and Corcoran. Plaintiff makes general allegations regarding the difference of conditions in Ad-Seg compared to general population.  Specifically, Plaintiff alleges that when he was in E-1 in Ad-Seg at SATF from November 2015 through July 21, 2016, the unit was in bad shape with ceilings that leaked when it rained causing the tiers to flood, leaking sinks and toilets, messed up lights, ancient mattresses, and clothing that was like a rag.  Plaintiff was also not given a jacket on cold, rainy days.  Plaintiff's general and conclusory allegations, without more, are insufficient to state a cognizable Eighth Amendment claim.  Plaintiff fails to allege sufficient facts to demonstrate that the conditions he is complaining of are grave enough to form the basis of an Eighth Amendment claim.  Plaintiff does not include facts regarding the circumstance, nature, or duration of any claimed violation.

C.     Due Process

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (quotation marks

omitted).

To the extent that Plaintiff alleges that being in Ad-Seg violates his due process rights, he fails to state a claim. The Due Process Clause does not confer a liberty interest in freedom from state action taken within a prisoner's imposed sentence. Sandin v. Conner, 515 U.S. 472, 480 (1995). The Due Process Clause does not create a liberty interest in remaining in the general population or being free from administrative segregation. Hewitt v. Helms, 459 U.S. 460, 466-67 (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1091 (9th Cir. 1985), abrogated in part on other grounds by Sandin, 515 U.S. 472. Administrative segregation is the type of confinement that should be reasonably anticipated by inmates at some point in their incarceration. Toussaint, 801 F.2d at 1091 (quoting Hewitt, 459 U.S. at 468). The Ninth Circuit has concluded that prisoners have no liberty interest in remaining free from administrative segregation or solitary confinement. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997).

A state may "create liberty interests which are protected by the Due Process Clause." Sandin, 515 U.S. at 483-84. A prisoner has a liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996) (quoting Sandin, 515 U.S. at 484). A plaintiff must assert a "dramatic departure" from the standard conditions of confinement before due process concerns are implicated. Sandin, 515 U.S. at 485–86; Keenan, 83 F.3d at 1088-89.

While lengthy confinement in segregation without meaningful review may constitute atypical and significant hardship, see Brown v. Oregon Dept. of Corrections, 751 F.3d 983, 989-990 (9th Cir. 2014), Plaintiff does not allege facts to support this. It also appears that Plaintiff received annual reviews for his Ad-Seg placement because he states that he was taken in June 2016 to the unit committee for his annual review where he was told that he would receive a six-month extension to complete the debriefing process.

Plaintiff does not allege facts showing an atypical and significant hardship or any specific injury caused by conditions in Ad-Seg. The fact that conditions in Ad-Seg do not mimic those afforded the general population does not trigger due process concerns. Further, Plaintiff's inability

to participate in programming in general population does not implicate a liberty interest. The Due Process Clause does not confer on inmates a liberty interest in eligibility for prison programs. Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (rejecting argument that a pending warrant and detainer that adversely affected defendant's prison classification and qualification for institutional programs implicated a due process right).

With respect to placement in Ad-Seg, due process requires only that prison officials hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons for considering segregation, and allow the prisoner to present his views. Toussaint, 801 F.2d at 1100-01 (quotation marks omitted). It appears based on Plaintiff's allegations that he has been in an Ad-Seg unit for over thirty years and Plaintiff is not challenging his initial placement in Ad-Seg in this action.

To the extent Plaintiff is bringing a due process claim based on a denial of the procedure or process set forth in Title 15 of the California Code of Regulations for debriefing, he fails to state a claim. In Toussaint, the Ninth Circuit held that California's prison regulations which govern the removal and segregation decision, do not create a liberty interest. Toussaint, 801 F.2d at 1097-98. Such regulations are procedural requirements that, even if mandatory, do not raise a constitutionally cognizable liberty interest. Id. at 1098.

Therefore, to the extent that Plaintiff is bringing a due process claim based on being confined to Ad-Seg or the alleged violation of the debriefing procedures in Title 15 of the California Code of Regulations, Plaintiff fails to state a cognizable claim.

### D. Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408

F.3d 559, 567-68 (9th Cir. 2005).  To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity.  Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983.  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  In addition, threats do not rise to the level of a constitutional violation.  Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Plaintiff alleges that his debriefing process was delayed and he was kept in Ad-Seg because he filed complaints about how he was being treated.  He also alleges that certain defendants moved him to a different unit because he filed complaints.  Assuming the validity of Plaintiff's allegations and construing them in the light most favorable to him, Plaintiff states a cognizable claim for retaliation against Defendants Davey, Leshniak, Hoggard, and Garcia for moving Plaintiff to 4A-3R in October 2016 because he complained to the administration about how he was being treated.  Plaintiff also states a claim for retaliation against Defendant Urban for delaying Plaintiff's debriefing process after Plaintiff turned in his new autobiography on November 17, 2016, because Plaintiff complained about how he was being treated.  The Court discusses Plaintiff's other allegations of retaliation below.

### 1. Defendants Kernan and Hubbard

Plaintiff alleges that Defendants Kernan and Hubbard, the Secretary of CDCR and Deputy Director of CDCR, respectively, retaliated against Plaintiff because he wrote letters complaining of problems.  However, this general, conclusory statement is insufficient to state a claim.

Plaintiff also alleges that Defendants Hubbard and Kernan conspired and worked with the other defendants because Plaintiff wrote to Defendants Hubbard and Kernan and then they spoke to the other defendants about Plaintiff complaining.  Plaintiff wrote Defendant Kernan a letter between November 2015 and June 2016 regarding the conditions in E-1 in Ad-Seg, which started an investigation, and another letter on September 2, 2016, complaining about the treatment he had been receiving in Unit 4A at Corcoran.  He wrote Defendants Kernan and Hubbard letters on September 23, 2016, and October 6, 2016, complaining about being in Ad-Seg for so long.  On

October 18, 2016, he wrote another letter to Defendant Kernan because his 602 appeals were not being processed and he was being denied access to the law library. On October 2, 2017, he wrote another letter to Defendant Hubbard complaining about being in Ad-Seg for so long.

Plaintiff indicates that Defendant Hubbard told the other defendants that Plaintiff should have been released from Ad-Seg already and that the other defendants ignored Defendant Hubbard. The fact that other defendants may have ignored Defendant Hubbard's statement that Plaintiff should have been moved or directive to move Plaintiff does not state a claim against Defendant Hubbard. Plaintiff alleges that no single defendant could keep Plaintiff in segregation without the approval of Defendants Davey, Kernan, and Hubbard, but when Plaintiff explains the chain of officials talking to other officials, he does not describe any officials talking to Defendant Hubbard. Plaintiff also alleges that Defendant Leshniak told Plaintiff that Defendants Kernan and Hubbard gave orders to Defendant Davey and others to keep Plaintiff in segregation. This statement contradicts Plaintiff's other allegations that Defendants Hubbard told other defendants that Plaintiff should have been released from Ag-Seg already.

Plaintiff alleges that it was obvious from his interviews with Defendant Leshniak in October 2016 that Defendant Leshniak spoke to Defendant Kernan, but this does not indicate what statements Defendant Kernan made or that any action or inaction by Defendant Kernan was in retaliation for protected conduct.

Plaintiff also alleges that Defendant Garcia knew that Defendants Hubbard and Kernan said that the autobiography was okay. Plaintiff alleges that Defendant Kernan knows that Plaintiff is being illegally held in Ad-Seg, but he has done nothing to correct it. These statements are insufficient to show that any action or inaction by Defendants Hubbard and Kernan were in retaliation for protected activity. Therefore, Plaintiff has failed to allege that Defendants Kernan and Hubbard retaliated against him.

2. Defendant Davey

Plaintiff alleges that he wrote Defendant Davey a letter on September 2, 2016, complaining about the treatment he was receiving in Unit 4A at Corcoran. He wrote another letter to Defendant Davey on October 6, 2016, complaining about being held in Ad-Seg for two years even though he

had turned in his autobiography over a year ago. Plaintiff wrote Defendant Davey asking to be moved to "mainline" so that he could program, but Defendant Davey did nothing. Plaintiff indicates that it was obvious from a conversation he had with Defendant Leshniak in October 2016 that Defendant Davey had talked to Leshniak. Plaintiff alleges that no single official/defendant could keep Plaintiff in segregation without the approval of Defendant Davey and Plaintiff indicates that Defendant Leshniak had to report the information he learned from Defendant Garcia, who received a report from Defendant Urban, to Defendant Davey to get his approval to keep Plaintiff in segregation.

While Plaintiff complained of the conditions at SATF sometime between November 2015 and June 2016, there is no indication that Defendant Davey, the warden at Corcoran, was even aware of these complaints or that any action or inaction by him was because of that complaint. The protected conduct that Defendant Davey was aware of started in September 2016 when Plaintiff started writing letters complaining of how he was being treated at Corcoran. There is no indication when or how often Defendant Davey approved keeping Plaintiff in Ad-Seg, so there is no indication that Defendant Davey approved delaying the debriefing process and keeping Plaintiff in Ad-Seg because of protected conduct, except for the decision to move Plaintiff to 4A-3R in October 2016.

Plaintiff makes other general, conclusory allegations that Defendant Davey along with other defendants allowed some other defendants to delay processing Plaintiff's debriefing, but Plaintiff's conclusory allegations are insufficient.

Therefore, Plaintiff has not sufficiently alleged a retaliation claim against Defendant Davey except for moving Plaintiff to 4A-3R in October 2016 in retaliation for Plaintiff filing complaints.

3.    Defendant Leshniak

Plaintiff alleges that he wrote to Defendant Leshniak and other defendants on September 2, 2016, complaining about the treatment he was receiving. On September 23, 2016, and October 6, 2016, he wrote to Defendant Leshniak and other defendants about the length of time he had been in Ad-Seg.

Defendant Leshniak interviewed Plaintiff several times in October 2016 about letters that

Plaintiff wrote to Defendants Kernan and Hubbard complaining about the way he was being treated. When Plaintiff said that officials refused to process his 602 appeals, Defendant Leshniak replied that he wanted to know who was denying the 602 appeals even though Plaintiff just explained it to him. The fact that Defendant Leshniak said that he wanted to know who was denying the 602 appeals does not show that he retaliated against Plaintiff.

Defendant Leshniak said that complaining would not get Plaintiff out of Ad-Seg any sooner. This statement itself without more, such as allegations regarding the tone or other context, does not indicate that any action or inaction by Defendant Leshniak was in retaliation for complaining.

Plaintiff alleges that Defendant Hubbard told Defendant Leshniak and other defendants that Plaintiff should have been released from segregation a long time ago, but these defendants delayed the debriefing process and ignored Defendant Hubbard. Defendant Leshniak was involved in a chain-of-command that was necessary to keep Plaintiff in Ad-Seg. Defendant Urban had to talk to Defendant Garcia, who had to talk to Defendant Leshniak, who then had to talk to Defendant Davey to get his approval. Plaintiff also makes the conclusory allegation that Defendant Leshniak kept Plaintiff in Ad-Seg because Plaintiff complained.

Plaintiff has alleged that Defendant Leshniak was aware of Plaintiff's complaints, but action or inaction after protected conduct is not in itself sufficient to state a retaliation claim. Plaintiff must plead sufficient factual allegations that the adverse action was because of the protected conduct and did not reasonably advance a legitimate correctional goal. See Rhodes, 408 F.3d at 567-68. Therefore, Plaintiff has not sufficiently alleged a retaliation claim against Defendant Leshniak except for moving Plaintiff to 4A-3R in October 2016 in retaliation for Plaintiff filing complaints.

4. Defendants Urban and Peterson

Defendants Urban and Peterson worked at SATF. In November 2014, Plaintiff told Defendant Urban that he wanted to debrief from gang activity and Defendant Urban guaranteed that the debriefing process could be completed in 6 to 8 months. Plaintiff turned in his autobiography to Defendant Urban and was then interviewed by Defendant Urban and other

officers.  In November 2015, Defendant Urban told Plaintiff that he was almost done typing up the report and that it would be sent to OCS for approval.  That same month, Plaintiff was moved to E-1 in Ad-Seg, which was in bad condition.  Plaintiff complained about the conditions to the warden and then to Defendant Kernan, which started an investigation.

Plaintiff alleges that he was moved in November 2015 to E-1 in Ad-Seg at SATF.  He alleges that the unit was in bad shape and that he complained to the warden and then to Defendant Kernan, which started a big investigation.  He also alleges that Defendant Urban stopped talking to Plaintiff and did not "pull Plaintiff out" after the administration at SATF and the staff in E-1 told Defendant Urban that Plaintiff was complaining.  The fact that Defendant Urban did not conduct more interviews of Plaintiff at this point is not an adverse action.  In fact, it appears that Plaintiff was not interviewed more at this point because Plaintiff was done with the process and Defendant Urban had to type up the report.

In June 2016, Plaintiff was taken to the unit committee for his annual review.  Defendant Peterson told Plaintiff that they were extending his Ad-Seg detention for 6 months so he could complete the debriefing process, which caused an argument between Defendant Peterson and Plaintiff.  Plaintiff felt that his debriefing process was taking longer than others even though he did what he was asked to do. Defendant Peterson said that he heard Plaintiff was complaining about the debriefing process taking too long and that Plaintiff refused to talk to IGI, so Defendant Peterson told Plaintiff to wait and do what IGI wants when they come to see him.  Defendant Peterson told Plaintiff that there is something that must be corrected in his autobiography.  When Plaintiff asked why he was not told about correcting something at the time he turned it in, Defendant Peterson looked at Defendant Urban and said that if Plaintiff continues to complain to the warden and Defendant Kernan, his case will be put on the back burner and will not go anywhere.  Plaintiff asked to stop the debriefing process, but Defendant Peterson refused and told the officers to get Plaintiff out of the office.  As Plaintiff was leaving the office, Defendant Peterson told Plaintiff to complain to the Secretary again.  While Plaintiff was upset with the delay in processing his debriefing application, he was informed during the meeting with Defendant Peterson and Urban that there was something that needed to be corrected in his autobiography and

that he should do what IGI wants when they see him.

When Plaintiff was moved to Corcoran on July 21, 2016, Defendant Urban told him that he would still be making the final decision about his debriefing process.  Plaintiff does not indicate that Defendant Peterson was involved with Plaintiff's debriefing process after Plaintiff was moved to Corcoran.  In fact, the only specific factual allegations regarding Defendant Peterson occurred during the June 2016 annual review.

Plaintiff then wrote letters in September and October 2016 complaining about the treatment he was receiving and the length of the debriefing process to Defendants Kernan, Hubbard, Davey, and Leshniak.  On November 17, 2016, Plaintiff filed a new autobiography that was accepted on that date.  Plaintiff has not been interviewed yet and he is still in Ad-Seg because of the debriefing process.

Plaintiff sufficiently alleges a retaliation claim against Defendant Urban for delaying Plaintiff's debriefing process after Plaintiff turned in his new autobiography on November 17, 2016, because Plaintiff complained about how he was being treated.  However, Plaintiff does not allege sufficient factual allegations that Defendant Peterson retaliated against Plaintiff because Plaintiff does not allege that Defendant Peterson took an adverse action against Plaintiff because Plaintiff engaged in protected activity.

5.    Defendant Slater and Doe Defendant

Plaintiff only makes general, conclusory allegations that Defendant Slater and Doe Defendant were involved in a conspiracy with other defendants to keep Plaintiff in Ad-Seg. Plaintiff alleges that defendants who are administrators have allowed other defendants, including Defendant Slater and Doe Defendant, to delay processing Plaintiff's debriefing.  Plaintiff also alleges that Defendant Slater ignored the complaints written by Plaintiff to Defendants Kernan and Hubbard, but there is no information that Defendant Slater even received these complaints.  These general, conclusory allegations are insufficient to state a claim.

**E.    Conspiracy**

In the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v.

County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. California, 497 F.2d 197, 200 (9th Cir. 1974).

A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d at 441 (quoting United Steel Workers of Am., 865 F.2d at 1541).

While Plaintiff has stated a retaliation claim against Defendants Davey, Leshniak, Hoggard, and Garcia for moving Plaintiff to 4A-3R in October 2016 because he complained about how he was being treated, Plaintiff does not allege sufficient factual allegations that there was a conspiracy or meeting of the minds amongst these defendants regarding the move.

Plaintiff alleges that Defendant Peterson conspired with Defendants Slater and Urban. Plaintiff alleges that in June 2016 at the time of Plaintiff's annual review, Defendant Peterson said that he has heard that Plaintiff has been crying about the debriefing process taking so long. When Plaintiff asked Defendant Peterson why he was not told that something had to be corrected in it at the time he turned in his autobiography over a year before, Defendant Peterson looked at Defendant Urban and said that if Plaintiff continues to complain to the warden and Defendant Kernan, his case would be put on the back burner and would not go anywhere. When Plaintiff was leaving the office, Defendant Peterson told Plaintiff to complain to the Secretary again. Defendant Urban told Plaintiff at the time he was moved to Corcoran in July 2016 that Defendant Urban would still be making the final decision regarding the debriefing. Plaintiff turned in a new autobiography in November 17, 2016, and it was accepted that day, but he has not been interviewed yet and is still in Ad-Seg pending debriefing. Plaintiff does not make any specific

allegations regarding how Defendant Slater was involved in the conspiracy. These allegations regarding the June 2016 statement between Defendants Urban and Peterson, the subsequent complaints by Plaintiff to the administration, and the delay of the debriefing process after Plaintiff turned in his new autobiography on November 17, 2016, are sufficient to state a conspiracy to retaliate claim against Defendants Urban and Peterson.

Many of Plaintiff's other conspiracy allegations involve general, conclusory statements that groups of defendants engaged in conspiracies. These general, conclusory allegations are insufficient to state a claim.

### F.      Violation of Title 15 of the California Code of Regulations

To the extent Plaintiff attempts to seek liability against any Defendant for violation of a state regulation, such claim fails. Violations of state prison rules and regulations, without more, do not support any claims under section 1983. Ove v. Gwinn, 264 F.3d 817, 824 (9th Cir. 2001); Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997). Only if the events complained of rise to the level of a federal statutory or constitutional violation may Plaintiff pursue them under section 1983. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

### G.      Declaratory Relief

Plaintiff seeks a declaratory judgment that his rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).

If this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any Defendant violated Plaintiff's rights is unnecessary.

/ / /

/ / /

## IV.

## CONCLUSION AND ORDER

For the reasons discussed above, the Court finds that Plaintiff has stated a cognizable claim for retaliation against Defendants Urban, Davey, Leshniak, Hoggard, and Garcia and a cognizable claim for conspiracy to retaliate against Defendants Urban and Peterson. The Court has also identified deficiencies in the complaint, as explained above.

The Court will grant Plaintiff an opportunity to cure the identified deficiencies which Plaintiff believes in good faith, are curable. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). If Plaintiff chooses to amend his complaint, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the cognizable claims identified by the Court, he may file a notice informing the Court that he does not intend to amend and he is willing to proceed only on his cognizable claims. The Court will then recommend to a district judge that this case only proceed on the claims set forth above, for the reasons explained in this order.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

If Plaintiff chooses to file an amended complaint, that complaint should be brief, Fed. R. Civ. P. 8(a), but it must also state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-89, 129 S. Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations admitted).

Plaintiff is also reminded that an amended complaint supersedes all prior complaints. Lacey, 693 F.3d at 927. Absent prior court approval, the amended pleading must be complete in

itself without reference to any prior pleading.  Local Rule 220.  Finally, any amended complaint is limited to **25** pages in length.  An amended complaint which exceeds this limit will be stricken.

Based on the foregoing, it is HEREBY ORDERED that:

1.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.    **Within thirty (30) days** from the date of service of this order, Plaintiff shall file either:

     a.    An amended complaint, limited to **25** pages in length, or

     b.    A notice that he does not wish to file an amended complaint and wishes to proceed only on the claim for retaliation against Defendants Urban, Davey, Leshniak, Hoggard, and Garcia and the claim for conspiracy to retaliate against Defendants Urban and Peterson; and

3.    Plaintiff is warned that if he fails to comply with this order, the Court will recommend to the district judge that this action be dismissed for the failure to prosecute and the failure to comply with a court order.

IT IS SO ORDERED.

Dated:   **June 4, 2018**

UNITED STATES MAGISTRATE JUDGE

21