UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO P. PINA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SCOTT KERNAN, et al.,<br><br>　　　　　Defendants. | Case No.: 1:17-cv-01681-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>[ECF No. 23] |

Plaintiff Pablo P. Pina is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's second amended complaint, filed October 4, 2018.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

///

///

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is currently incarcerated at California State Prison Corcoran ("Corcoran"). Plaintiff alleges that he has been in administrative segregation ("Ad-Seg") on non-disciplinary status pending debriefing from gang activity since November 17, 2014, at Substance Abuse Treatment Facility ("SATF") and then Corcoran.

On November 17, 2014, Plaintiff was placed in administrative segregation at SATF. That evening, Plaintiff was taken to see Captain Perez to receive a lock up order. Captain Perez told Plaintiff that he would be held in administrative segregation pending an investigation by an Institutional Gang Investigator (IGI). Perez asked Plaintiff what he panned on doing, and Plaintiff responded that he was done with gang activity. Perez then asked if Plaintiff wanted him to call IGI to talk with him, and Plaintiff told him that he was ready to debrief.

2

IGI Urban said he could have Plaintiff out of segregation in six to eight months. Plaintiff asked Urban if he could get to a level three prison because the Parole Board wanted him to lower his custody level. Urban said he could guarantee that Plaintiff would get a transfer to a level three prison.

Plaintiff wrote his autobiography in order to debrief detaining his time as a gang member. The autobiography was turned in in February or March of 2015, but it took months for someone to pick it up. Soon thereafter, IGI Urban and Harris interviewed Plaintiff and asked a few questions about his gang activities. Plaintiff was still in segregation in the summer of 2015, and Plaintiff asked Urban why it was taking so long.

In November 2015, Plaintiff was moved to another administrative segregation unit in E-1, and had now been in segregation for a year. On the day Plaintiff was moving, Urban told Plaintiff that he was done with his report and just needed to type it. Urban said once it was typed he would sent it to the Office of Correctional Safety (OCS). Plaintiff asked Urban about the override for a transfer to a level three facility, and he said he talked to the counsel and it would be done.

Plaintiff was moved to E-1 and placed in cell 238. Plaintiff noticed that there was water everywhere and the sinks and toilets did not work. The unit was filthy and the cells flooded when it rained. The mattresses were dirty and torn. It was also cold and inmates were not issued jackets or allowed to take warm clothing to the yard. Plaintiff requested informally that staff fix the problems, but he was accused of complaining by staff. Plaintiff subsequently filed appeals and encouraged others to the same, but the appeals were all rejected. Plaintiff then wrote to the warden and captain complaining about the conditions in segregation. Thereafter, Plaintiff noticed that IGI Urban stopped going to see Plaintiff for several months.

An inmate who was going through the debrief process was pulled out by Urban and later told Plaintiff that staff are mad at him because he was complaining too much about the conditions in administrative segregation and filing too many grievances.

An inmate named White was pulled out by IGI Urban and he too was told that Plaintiff was complaining too much, and staff were mad at him because he had the Warden down their throats. Six more months passed and Plaintiff was still in segregation, and had been there for eighteen months.

3

In June 2016, Plaintiff was taken to committee for annual 180-day review, along with inmate Garcia. Inmate Garcia was released from administrative segregation and Plaintiff was told he would be released before Garcia. When Plaintiff went to the committee review, Peterson and Urban were present in the office. As soon as Plaintiff sat down, Peterson told him they were extending his segregation for six months, so IGI could finish his debriefing process. Plaintiff told Peterson and the committee that he had been in segregation for eighteen months and six more months would be a total of two years, despite Urban's advisement that he would be out in six months. Peterson then said he heard that Plaintiff was complaining too much about the conditions and organizing the inmates and they were tired of it. Plaintiff told Peterson about the cell flood to which Peterson was aware. Peterson then said that Urban told him that Plaintiff was refusing to be interviewed by IGI. Plaintiff advised Peterson that it was not true as Urban advised him all that was necessary was to type the report; however, after Plaintiff moved to E-1 Urban stopped visiting him. Peterson told Plaintiff that if IGI went to see him he better talk to them and not file further complaints. Peterson then said Urban indicated that he may need to re-write his autobiography. Peterson said if IGI tells you to do it over again, you will do as they say. After Plaintiff asked for a transfer, Peterson told him that he will do as instructed or he would see that Plaintiff stay in segregation indefinitely. Plaintiff started to argue with Peterson and the committee, and he was removed from the interview. As Plaintiff was leaving, Peterson said keep filing grievances and writing the warden and you will never get out of here.

A while later, another counselor told Plaintiff to be patient a while longer because a new program was about to pen for inmates that are debriefing and it will be much better. Plaintiff heard rumors that Kernan and Hubbard were working on a new program for debriefing in old Corcoran.

In July 2016, Plaintiff was moved to old Corcoran security housing unit 4A-3L. On this same day, IGI Urban told Plaintiff that Lieutenant Garcia would be handling his case, but Urban would still have the last word. When Plaintiff arrived at 4A-3L, there was no programming at all. All of his property was confiscated and he was denied access to the law library.

In August 2016, Plaintiff was taken to a unit committee in 4A-3L, where Captain Leshniak, Warden Davey, and Sergeant Buenowere were present. Leshniak said Plaintiff was sent there to complete the debriefing process, and his stay would be extended six months. Plaintiff advised the

committee that he finished his autobiography and Urban said he was just typing it up. The Warden said there was no mention of it in the records, so he would continue in segregation.

The Warden said that Kernan and Hubbard were working on opening a debrief program, but it was not yet ready. Plaintiff continued on strip cell status for the next two months.

On October 18, 2016, Plaintiff filed an inmate grievance in an attempting to get his legal materials and go to the law library. The appeals coordinator, Mr. Goree, refused to process the appeal and kept sending it back telling him to wait a month and see what happens.

In September 2016, Plaintiff wrote to Warden Davey, Captain Leshniak, Secretary Kernan, and Susan Hubbard complaining about the conditions at Corcoran and the refusal to process his appeals. Captain Leshniak said they were aware of his complaints. Plaintiff was called to the office to talk to Captain Leshniak about his complaints to Kernan and the Warden. Leshniak asked who was not allowing Plaintiff to file appeals. When Plaintiff told him it was the appeals coordinator, Leshniak told Plaintiff Corcoran programs the way it has always done and it will continue that way.

In October 2016, Plaintiff received a visit form IGI Salceda and he gave Plaintiff an envelope and told him he needed to re-write his autobiography. Plaintiff told Salceda he already wrote it and gave it to Urban. Salceda said that Lieutenant Garcia told him to give to Plaintiff to re-write. During this same month, Plaintiff was called to Captain Leshniak's office who asked why he wrote a letter to Secretary Kernan and Hubbard about the conditions in the security housing unit. Plaintiff said Urban lied and said he would be given a lot of programing, like the mainline. Leshniak said that Kernan and Hubbard are working on opening a new debriefing program, but it was not yet ready. Leshniak made it clear that whatever was being done was with the approval of Kernan and Hubbard. Leshniak said that Susan Hubbard read his autobiography that Garcia gave to her.

IGI Urban and Counselor Peterson set off the motion and began the conspiracy to hold Plaintiff in segregation even though they knew he completed the autobiography. They delayed Plaintiff's release from the security housing unit because they were made he filed grievances and complaints.

When Plaintiff moved to old Corcoran security housing unit, the conspiracy and retaliation continued with Lieutenant Garcia, Captain Leshniak, Warden Davey and Counselor Hoggard.

In October 2016, Captain Leshniak provided Plaintiff with a copy of the new operational procedures for the debriefing process. The procedure stated that an inmate must turn in his autobiography within thirty days, or he will be kicked out of the problem or sent back to administrative segregation. That afternoon two guards went to Plaintiff's cell and told him to pack his property to move to 4A-3R, because he had not turned in his autobiography. Officer Diaz told Plaintiff that Hoggard, Leshniak, Davey, and Garcia ordered the move. Plaintiff contends that the decision had to be authorized by Secretary Kernan and Hubbard.

In November 2016, while Plaintiff was sitting in a holding cell, Lieutenant Slater and another officer talked to Plaintiff, and Slater told him that he was going to be next inmate that OCS interviews. Slater and Garcia servawork together and must have conspired to keep Plaintiff in administrative segregation. Plaintiff was never interviewed by OCS as stated by Slater. In this same month, Plaintiff was moved back to the left side of the unit. Secretary Kernan and Hubbard approved the new debriefing procedures. The new program stated that once an inmate turns in his autobiography, he will receive a chrono from IGI. From that point, OCS has exactly ninety days to compete their interviews. OCS took until February 2018 to complete Plaintiff's debriefing process, resulting in his placement in administrative segregation for three years.

In May 2018, Plaintiff was transferred to Kern Valley State Prison (KVSP), a 180-design yard, a prison that is used for disciplinary problem inmates. However, in April 2018, a month prior, Plaintiff went before a committee at Corcoran and was given a 270 override and scheduled for transfer to Mule Creek Prison.

On May 15, 2018, Counselor Combs went to Plaintiff's cell and told him that he was being sent to KVSP, not Mule Creek Prison. Combs said it was because there is no inmate at Mule Creek or SATF, Plaintiff's second choice. When Plaintiff was transferred to KVSP, he could not have all of his legal materials and was forced to leave three boxes of documents at receiving.

On June 16, 2018, Plaintiff was advised that he was expected to stay at KVSP for a year. Plaintiff was advised by Counselor Berry that he was sent to KVSP because there was no opening at Mule Creek.

///

6

**III.**

**DISCUSSION**

**A.     Cruel and Unusual Punishment**

Plaintiff alleges that Defendants subjected him to cruel and unusual punishment because their actions and non-actions have caused Plaintiff to be in segregation for three years.

The Eighth Amendment's prohibition against cruel and unusual punishment protects convicted prisoners. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham, 490 U.S. at 395 n.10. Although prison conditions may be restrictive and harsh, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (quotation marks omitted).

However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 834, 841 (1994) (quotations omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

"While the Eighth Amendment requires prison officials to provide prisoners with the basic human needs, including reasonable safety, it does not require that the prisoners be comfortable and provided with every amenity." Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)). A housing assignment may be "restrictive and even harsh," but will not violate the Eighth Amendment unless it "either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment." Rhodes v. Chapman, 452 U.S. 337, 348-49 (1981) (finding inmates had no constitutional right to be housed in single cells).

Plaintiff alleges that he was in segregation for three years between his time at SATF and Corcoran. Plaintiff makes general allegations regarding the difference of conditions in segregation compared to general population. Specifically, Plaintiff contends there was water everywhere and the sinks and toilets

did not work. The unit was filthy and the cells flooded when it rained. The mattresses were dirty and torn. It was also cold and inmates were not issued jackets or allowed to take warm clothing to the yard. Plaintiff's general and conclusory allegations, without more, are insufficient to state a cognizable Eighth Amendment claim. Plaintiff fails to allege sufficient facts to demonstrate that the conditions he is complaining of are grave enough to form the basis of an Eighth Amendment claim. Accordingly, this claim should be dismissed for failure to state a cognizable claim for relief.

**B.     Due Process**

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (quotation marks omitted).

To the extent that Plaintiff alleges that being in Ad-Seg violates his due process rights, he fails to state a claim. The Due Process Clause does not confer a liberty interest in freedom from state action taken within a prisoner's imposed sentence. Sandin v. Conner, 515 U.S. 472, 480 (1995). The Due Process Clause does not create a liberty interest in remaining in the general population or being free from administrative segregation. Hewitt v. Helms, 459 U.S. 460, 466-67 (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1091 (9th Cir. 1985), abrogated in part on other grounds by Sandin, 515 U.S. 472. Administrative segregation is the type of confinement that should be reasonably anticipated by inmates at some point in their incarceration. Toussaint, 801 F.2d at 1091 (quoting Hewitt, 459 U.S. at 468). The Ninth Circuit has concluded that prisoners have no liberty interest in remaining free from administrative segregation or solitary confinement. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997).

A state may "create liberty interests which are protected by the Due Process Clause." Sandin, 515 U.S. at 483-84. A prisoner has a liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996) (quoting Sandin, 515 U.S. at 484). A plaintiff must assert a "dramatic departure" from the standard conditions of confinement before due process concerns are implicated. Sandin, 515 U.S. at 485–86; Keenan, 83 F.3d at 1088-89. Lengthy confinement in segregation without meaningful review may constitute atypical and significant hardship. See Brown v. Oregon Dept. of Corrections, 751 F.3d 983, 989-990 (9th Cir. 2014).

Construing Plaintiff's allegations liberally and in his favor, the Court finds that Plaintiff states a cognizable due process violation against Defendants Urban, Peterson, Garcia, Leshniak, Davey, and Hoggard for retaining him in administrative segregation for three years, despite Plaintiff's claim that he completed his autobiography and the prolonged detention was in retaliation for exercising his rights under the First Amendment. See Brown, 751 F.3d at 989-90.

**C.     Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). In addition, threats do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

1.     Retention in Administrative Segregation

Plaintiff alleges that his debriefing process was delayed and he was kept in segregation because he filed complaints about how he was treated. He also alleges that certain Defendants moved him to a different unit because he filed complaints. Based on Plaintiff's allegations in the second amended complaint, Plaintiff states a cognizable claim for retaliation against Defendants Urban and Peterson for prolonged retention in the administrative segregation after he submitted he autobiography in February or March 2015, and transfer to 4A-3L. In addition, Plaintiff states a cognizable retaliation claim against Defendants Lieutenant Garcia, Captain Leshniak, Warden Davey

and Counselor Hoggard for moving him in October 2016, to 4A-3R, because he complained to administration about he how was being treated and false claim that he had not turned in his autobiography. However, the reasons explained below, Plaintiff fails to state any other cognizable retaliation claims.

      **a**      **Defendants Kernan and Hubbard**

Under section 1983, Plaintiff must prove that the defendants holding supervisory positions personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no respondeat superior liability, and each defendant is only liable for his or her own misconduct. Iqbal, at 1948-49. A supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Although Plaintiff attempts to link Defendants Secretary Kernan and Deputy Secretary Hubbard to actions/inactions giving rise to his alleged constitutional violations, Plaintiff's allegations are general and conclusory in nature which is insufficient. Plaintiff contends that in September 2016, he wrote letters to Kernan and Hubbard regarding the conditions at Corcoran's security housing unit. In addition, he wrote letters to Kernan and Hubbard regarding the failure to process his inmate grievances. Plaintiff further contends that Defendants Hoggard, Leshniak, Davey and Garcia had to get his retaliatory transfer to 4A-3R approved by Kernan and Hubbard. However, Plaintiff's complaint is devoid of any allegations supporting the existence of a supervisory liability claim against Kernan and Hubbard. The only basis for such a claim would be respondeat superior, which is precluded under section 1983. Accordingly, Plaintiff fails to state a cognizable claim against Kernan and Hubbard.

///
///
///

### b. Defendant Slater and Doe Defendant

Plaintiff fails to state a cognizable claim against Defendant Slater and Doe Defendant.

With regard to these Defendants, Plaintiff alleges only that in November 2016, Slater and another officer (Doe Defendant) went to his cell, and Slater informed him that he would be the next inmate interviewed by OCS. However, he was never interviewed as stated by Slater. Plaintiff's allegations are conclusory in nature and fail to set forth any facts to demonstrate that they retaliated against him by retaining him in administrative segregation. The mere fact that Plaintiff was not interviewed by OCS as stated by Slater is wholly insufficient to give rise to claim for retaliation. Accordingly, Plaintiff fails to state a cognizable retaliation claim against Defendant Slate and Doe Defendant.

2. <u>Transfer to KVSP</u>

Plaintiff contends that he was transferred to KVSP instead of Mule Creek Prison in retaliation. Plaintiff alleges only that in April 2018, he went before a committee at Corcoran and was given a 270 override and scheduled for transfer to Mule Creek Prison. However, on May 15, 2018, Counselor Combs went to Plaintiff's cell and told him that he was being sent to KVSP, not Mule Creek Prison. Combs said it was because there is no intake at Mule Creek or SATF-Plaintiff's second choice. Plaintiff fails to set forth sufficient facts to support a plausible inference of retaliation in the transfer to KVSP instead of Mule Creek. Mere speculation that a transfer is retaliatory is not sufficient. See <u>McCollum v. CDCR</u>, 647 F.3d 870, 882-83 (9th Cir. 2011).

Plaintiff's vague and conclusory claim that an inmate advised him his transfer "was coming from Sacramento, Kernan and Hubbard, because they said I was a litigator and filed too many complaints," is too speculative and tenuous to demonstrate that his transfer did not serve a legitimate penological purpose. Accordingly, Plaintiff fails to state a cognizable retaliation claim for the transfer to KVSP.

### D. Conspiracy

In the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." <u>Buckey v. County of Los Angeles</u>, 968 F.2d 791, 794 (9th Cir. 1992); <u>Karim-Panahi v. Los Angeles Police Department</u>, 839 F.2d

11

621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. California, 497 F.2d 197, 200 (9th Cir. 1974).

A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d at 441 (quoting United Steel Workers of Am., 865 F.2d at 1541).

Based on Plaintiff's allegations in the second amended complaint, Plaintiff states a cognizable claim for conspiracy to retaliate against Defendants Urban and Peterson for prolonged retention in the administrative segregation after he submitted he autobiography in February or March 2015, and transfer to 4A-3L. In addition, Plaintiff states a cognizable conspiracy to retaliate claim against Defendants Lieutenant Garcia, Captain Leshniak, Warden Davey and Counselor Hoggard for moving him in October 2016, to 4A-3R, because he complained to administration about he how was being treated and false claim that he had not turned in his autobiography.

### E. Actions at KVSP

To the extent Plaintiff is attempting to bring retaliation claims against Counselor Berry and Captain Asabedo, he cannot do so in this action.

A plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of North America, 623 F.3d 1371, 1375 (9th Cir. 1980). Here, Plaintiff cannot seek relief against individuals employed at KVSP, as those alleged actions took place in 2018, at a different time and different location. Although the claim may allege retaliatory actions, the events giving rise to Plaintiff's claims against the officials at KVSP are separate and distinct

12

from the defendants and events in the second amended complaint, as they occurred during different time periods at different prisons. As such, the claims do not appear related within the meaning of Rule 20, and they may not be properly joined in this one action.

Accordingly, Plaintiff's claims against Berry and Asabedo should be dismissed from this action.

### F. Declaratory Judgment

Plaintiff seeks a declaratory judgment that his rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).

If this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any Defendant violated Plaintiff's rights is unnecessary.

## IV.

## CONCLUSION AND RECOMMENDATIONS

For the reasons stated herein, Plaintiff states a cognizable retaliation and conspiracy claims against Defendants Urban, Peterson, Garcia, Leshniak, Davey, and Hoggard, as explained above. However, Plaintiff fails to state any other cognizable claims for relief. Plaintiff was previously notified of the deficiencies as to these claims, and based on the allegations in the present complaint, as well as Plaintiff's previous complaints, the Court is persuaded that Plaintiff is unable to allege any additional facts that would support a claim for relief under § 1983, and further amendment would be futile. See Hartman v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.")

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's retaliation and conspiracy claims against Defendants Urban, Peterson, Garcia, Leshniak, Davey, and Hoggard, as explained above;

2. All other claims and Defendants be dismissed from the action for failure to state a cognizable claim for relief; and

3. The matter be referred back to the undersigned for initiation of service of process.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 6, 2018**

UNITED STATES MAGISTRATE JUDGE